JUSTICE BOWMAN, dissenting: I respectfully dissent. A biological parent has a fundamental liberty interest in raising his or her own child. In re Gwynne P., 215 Ill. 2d 340, 353 (2005). Thus, under section 1(D) of the Adoption Act (750 ILCS 50/l(D) (West 2004)), the State has the burden of proving by clear and convincing evidence that the parent is unfit before the trial court may terminate parental rights. In re G.W., 357 Ill. App. 3d 1058, 1060 (2005). Contrary to the majority, I believe that the trial court’s ruling that the State met its burden is contrary to the manifest weight of the evidence. The trial court found that Terri was unfit on the ground that she failed to maintain a reasonable degree of interest, concern, or responsibility as to the children’s welfare, in that she did not financially support the children or maintain sufficient contact with them. The only witness to testify during the parental fitness hearing was a foster care caseworker, Laurel Dutton. Dutton testified that Terri had completed an inpatient drug treatment program in January 2005, and that she was currently in an outpatient program and believed to be employed. Terri’s most recent drug tests were negative. Dutton also testified that Terri had visited the children about five times since January 2005, corresponding with court dates. The majority believes that these visitations were not significant because Terri’s “attendance was already required by the court.” 362 Ill. App. 3d at 1178. However, visitation with the children was not mandated by the court, and I would not hold it against Terri that she efficiently scheduled visitations when she was in Kendall County for court. This is especially true given that Terri was living and working in Peoria, a considerable distance away, and that the children were in the care of Terri’s father, presumably a person whom Terri trusted. I also think that Terri’s failures to supplement these visits with calls, cards, or letters is not of exceptional importance given that at the time of the hearing, T.C. was not yet seven years old and M.C. was only three years old. Additionally, although Dutton testified that Terri did not take advantage of every opportunity to visit the children, Dutton responded “I don’t know how many times” when asked how often Terri had her father bring the children to visit her in drug treatment. Also, as the majority recognizes, the court should consider whether the parent’s failure to visit a child was motivated by a need to cope with personal problems rather than an indifference or lack of concern for the child. In re Adoption of Syck, 138 Ill. 2d 255, 279 (1990). Given Terri’s participation in drug treatment, I do not believe that her choice to not engage in every possible visitation with the children constitutes clear and convincing evidence of a lack of interest or concern for them. See also In re F.S., 322 Ill. App. 3d 486, 497 (2001) (mother’s enrollment in drug treatment program explained some missed visits with her child). Finally, while the trial court found that Terri had also failed to financially support the children, the State presented no evidence that she was in a position to provide such support. In my opinion, it is clearly evident that the State did not meet its burden of presenting clear and convincing evidence that Terri failed to maintain a reasonable degree of interest, concern, or responsibility as to her children’s welfare. Therefore, I would reverse the trial court’s orders declaring Terri to be unfit and terminating her parental rights.